IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| JOHN GOODMAN,<br><br>    Plaintiff,<br><br>    vs.<br><br>DTG OPERATIONS, INC.,<br><br>    Defendant. | Civ. No. 14-00222 HG-KSC |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT DTG OPERATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 69)**

Plaintiff John Goodman filed a complaint alleging claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, disability discrimination in violation of the Americans With Disabilities Act of 1990, a violation of the Family Medical Leave Act, and a violation of the Hawaii State Whistleblower's Protection Act against his former employer, Defendant DTG Operations, Inc.

Defendant filed a Motion for Summary Judgment as to each of Plaintiff's claims.

Plaintiff abandoned his claims pursuant to Title VII of the Civil Rights Act and the Americans with Disabilities Act.

Plaintiff opposes summary judgment on his claims pursuant to the Family Medical Leave Act and the Hawaii State Whistleblower's

1

Protection Act.

The Defendant's Motion for Summary Judgment (ECF No. 69) is **GRANTED, IN PART, AND DENIED, IN PART.**

Defendant's Motion for Summary Judgment as to **Count I** for racial discrimination, **Count II** for disability discrimination, and **Count III** for retaliation is **GRANTED.**

Defendant's Motion for Summary Judgment as to **Count IV** for a violation of the Family Medical Leave Act and **Count V** for a violation of the Hawaii Whistleblower's Protection Act is **DENIED.**

## PROCEDURAL HISTORY

On May 12, 2014, Plaintiff John Goodman filed a Complaint. (ECF No. 1).

On August 1, 2014, Plaintiff filed a First Amended Complaint. (ECF No. 16).

On August 21, 2014, Defendant filed a MOTION FOR PARTIAL DISMISSAL OF FIRST AMENDED COMPLAINT FILED AUGUST 1, 2014. (ECF No. 24).

On September 15, 2014, Plaintiff filed a SECOND AMENDED COMPLAINT. (ECF No. 29).

On September 16, 2014, the Magistrate Judge issued a Minute Order striking Plaintiff's Second Amended Complaint. (ECF No. 31).

On September 30, 2014, the Court filed the Parties'

STIPULATION 1) TO ALLOW PLAINTIFF TO FILE SECOND AMENDED
COMPLAINT AND 2) TO WITHDRAW DEFENDANT'S MOTION FOR PARTIAL
DISMISSAL OF FIRST AMENDED COMPLAINT.  (ECF No. 32).

On October 9, 2014, Plaintiff filed his SECOND AMENDED
COMPLAINT.  (ECF No. 35).

On October 7, 2015, Defendant filed DEFENDANT DTG
OPERATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT.  (ECF No. 69).

On the same date, Defendant filed DEFENDANT DTG OPERATIONS,
INC.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT.  (ECF No. 70).

On October 27, 2015, Plaintiff filed PLAINTIFF JOHN
GOODMAN'S OPPOSITION TO DEFENDANT DTG OPERATIONS, INC.'S MOTION
FOR SUMMARY JUDGMENT FILED ON OCTOBER 7, 2015.  (ECF No. 73).

On the same date, Plaintiff filed PLAINTIFF JOHN GOODMAN'S
CONCISE STATEMENT OF FACTS IN RESPONSE TO DEFENDANT DTG
OPERATIONS, INC.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT FILED OCTOBER 7, 2015.  (ECF No. 72).

On November 10, 2015, Defendant filed DEFENDANT DTG
OPERATIONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT FILED ON OCTOBER 7, 2015.  (ECF No. 74).

On December 1, 2015, the Court held a hearing on Defendant's
Motion for Summary Judgment.  (ECF No. 75).

## BACKGROUND

The Parties agree to the following facts:

On September 13, 2005, Plaintiff John Goodman began his employment with Defendant DTG Operations, Inc., doing business as Dollar Thrifty Automotive Group.  (Declaration of Terri Nani Mitchell, City Operations Manager for Defendant DTG Operations, Inc., ("Mitchell Decl.") at ¶ 4, ECF No. 70-1; Deposition of Plaintiff John Goodman ("Goodman Depo.") at p. 52, ECF No. 70-24).

Plaintiff was employed at one of Defendant's rental car facilities on the island of Maui.  (Mitchell Decl. at ¶ 3, ECF No. 70-1).  Plaintiff was employed as a Service Agent and his duties included washing, cleaning, and preparing vehicles for rental as well as moving vehicles to the rental areas for customers' use.  (Id. at ¶ 4).

### Defendant's Drug and Alcohol-Free Workplace Policy

Plaintiff was provided with notice of Defendant's Drug and Alcohol-Free Workplace Policy at the beginning of his employment. (Goodman Depo. at pp. 387-88, ECF No. 70-24; Defendant DTG's Drug and Alcohol Policy created in July 2001 and last revised on April 2011, attached as Ex. B to Declaration of General Manager Nancy Sulenta ("Sulenta Decl."), ECF No. 70-10).

Defendant's policy contains a Post-Accident Testing

4

Provision that requires any employee involved in an accident **that causes damage** to Defendant's vehicles or equipment to submit to drug and alcohol testing.  (Defendant DTG's Drug and Alcohol Policy at p. 4, attached as Ex. B to Sulenta Decl., ECF No. 70-10) (emphasis added).

**Plaintiff's Complaints of Workplace Safety**

In 2009, Plaintiff complained to Defendant's Senior Operations Manager Douglas Austria and Operations Manager Scott Ferreira that he believed other employees were driving too fast when moving vehicles in the lot.  (Goodman Depo. at pp. 282-83, ECF No. 70-24).

Sometime in either July, August, or September of 2012, Plaintiff complained of the same safety issue to his direct supervisor, Operations Manager Zamuel Kalani Tomas ("Operations Manager Tomas").  (Goodman Depo. at pp. 281-84, ECF No. 70-24).

**Plaintiff's First Notice to Defendant of His Need for Cataract Surgery in August 2012**

Plaintiff learned that he had cataracts in June 2009. (Goodman Depo. at p. 176, ECF No. 70-24).  In mid-August 2012, Plaintiff Goodman spoke with Defendant's General Manager Nancy Sulenta ("General Manager Sulenta") about his need to have cataract surgery.  (Goodman Depo. at p. 185, ECF No. 70-24).

General Manager Sulenta provided Plaintiff with information as to
how to contact Unum, Defendant's third-party leave administrator,
about seeking leave.  (<u>Id.</u>)

**Plaintiff's Workplace Incident on September 8, 2012**

On Saturday, September 8, 2012, Plaintiff was moving one of
Defendant's vehicles and reversed it into a padded pole.
(Goodman Depo. at p. 327-28, ECF No. 70-24).

Plaintiff testified at his deposition that he checked the
vehicle for damage and did not see any.  (<u>Id.</u> at p. 328).

Plaintiff stated that "[Operations Manager Tomas] was the
first one to check for damage and conveyed to [Plaintiff] that
there was no damage."  (<u>Id.</u> at p. 329).  Plaintiff stated that
when Tomas examined the vehicle he said, "Oh, it's okay.  No
damage.  Put it on the line."  (<u>Id.</u> at p. 331).  Plaintiff claims
Tomas said, "The car is fine.  It's fine.  No damage."  (<u>Id.</u> at
p. 332).

Plaintiff explained that he was sure that there was no
damage based on his own observations as well as Tomas' clear,
confident, and sincere statements that there was no damage to the
vehicle.  (<u>Id.</u> at p. 333).

Plaintiff testified that Tomas did not place a sticker on
the vehicle to indicate that there was damage to it.  (<u>Id.</u> at p.
330).  Plaintiff said if there was a scratch or any other damage

6

to the car it would have been "put down." (<u>Id.</u> at p. 333).

The vehicle was not removed from Defendant's inventory of vehicles to rent out.  Rather, immediately following the incident the Defendant rented out the vehicle that Plaintiff had backed into a pole.  (Incident Report dated Sept. 8, 2012, completed by Zamuel Kalani Tomas, attached as Ex. A to Tomas Decl., ECF No. 70-6).

Operations Manager Tomas wrote an "Incident Report" that stated the following:

> I was at the pumps when I heard a collision in the back of me.  I turned around to see John Goodman backed up against the pole with the rear bumper pushed in.  In the heat of the moment I accidentally shouted out to him "BACK UP."  Right after I corrected myself and told him "NO I mean pull forward."  I checked the car for damages & couldn't barely see anything.  I was going to let this go then decide[d] to have him fill out an [Accident/Damage Report] & take pictures of the car.

> (<u>Id.</u>)

Tomas' Report does not describe the make, model, year, color, license plate, or VIN number of the vehicle, and Tomas' Report itself acknowledges that Tomas did not write down any information about the vehicle before it was rented out.  (<u>Id.</u>)

Plaintiff Goodman completed the rest of his shift on September 8, 2012, following the incident.  (Goodman Depo. at pp. 189-90, ECF No. 70-24).  Plaintiff was not instructed on September 8, 2012, that he was required to undergo a drug and alcohol screening.  (<u>Id.</u> at p. 336).

Tomas claims that he provided Plaintiff with an Accident/Damage Report to complete following the incident. (Tomas Decl. at ¶ 6, ECF No. 70-5).  Plaintiff disputes Tomas' claim and testified in his deposition that he never received an Accident/Damage Report to complete.  (Goodman Depo. at pp. 334-336, ECF No. 70-24).

**Plaintiff Worked on September 9, 2012, the Day after the Incident**

Plaintiff also worked his scheduled shift on September 9, 2012, the day following the incident.  (Goodman Depo. at pp. 189-90, ECF No. 70-24).

On September 9, 2012, Operations Manager Tomas sent an e-mail to General Manager Sulenta.  (E-mail from Kalani Tomas to Nancy Sulenta dated Sept. 9, 2012, attached as Ex. B to Tomas Decl., ECF No. 70-7).  Tomas' e-mail with the subject "John Goodman" stated:

> Yesterday he got into an accident by the gas pumps.  He reversed into the new yellow poles blocking the new vacuum.  I told him to fill out an accident report and I took pictures of the car.  A slight crease on the rear bumper, barely visible.  John still didn't finish the report because he can't see what he's filling out.
>
> Anyway Nancy he wants to talk to you tomorrow.  He is going to plead his case and say that oil on the pedal was the reason for this accident.  This might be his last accident.  Will follow up with you tomorrow.
>
> (Id.)

Despite Tomas' e-mail on September 9, 2012, that stated

8

concerns as to Plaintiff's vision, Defendant permitted Plaintiff to work.  He did not mention to Plaintiff a need to undergo a drug and alcohol screening on either September 8th or 9th of 2012.  Plaintiff was not told that he could not work until he completed a drug and alcohol screening.  (Id.)

**Plaintiff's September 10, 2012 Request for Leave**

On September 10, 2012, Plaintiff called Defendant's office prior to his shift and informed Senior Operations Manager Diane Martin ("Senior Operations Manager Martin") that he needed cataract surgery and was requesting leave under the Family Medical Leave Act.  (Sulenta Decl. at ¶ 7, ECF No. 70-8; Goodman Depo. at pp. 188-89, ECF No. 70-24).  At this point no one had talked to Plaintiff about the incident or indicated that there had been damage to the vehicle and that a drug test would be requested.

Plaintiff stated that after the incident on September 8, 2012, he realized that his cataracts began impacting his ability to perform his job functions.  (Goodman Depo. at pp. 192-94, ECF No. 70-24).  Plaintiff testified in his deposition,

> I could see.  I could still drive.  I could park cars.
> I could detail cars.  At the same time, that was
> starting to impact -- it was crossing that line where
> it was starting to be difficult.  That was quite a
> motivator right there to go -- I needed to just -- to
> actually get this taken care of....[By September 10,
> 2012, when I called to start leave], [my eyesight] was
> impaired [by cataracts] to the point where I needed --

this required leaving for the surgery.

(Goodman Depo. at pp. 193-94, ECF No. 70-24).

**Defendant's Communications with Plaintiff Following His Leave Request on September 10, 2012**

Following Plaintiff's call to Defendant's office on September 10, 2012, Senior Operations Manager Martin informed General Manager Sulenta that Plaintiff had requested leave. (Sulenta Decl. at ¶ 7, ECF No. 70-8).

According to General Manager Sulenta, she relied on the e-mail communication from Operations Manager Tomas that Plaintiff "caused minor damage to a rental vehicle" and decided that Plaintiff was required to undergo a drug and alcohol screening pursuant to its policy for accidents that result in damage. (Sulenta Decl. At ¶ 4, ECF No. 70-8).  Subsequent to Plaintiff's request for leave pursuant to the Family Medical Leave Act, General Manager Sulenta scheduled Plaintiff Goodman to undergo drug and alcohol testing on September 10, 2012.  (Sulenta Decl. at ¶¶ 4-6, ECF No. 70-8).

Plaintiff informed Defendant that he was taking leave pursuant to the Family Medical Leave Act prior to Defendant's attempt to inform Plaintiff that he must undergo a drug and alcohol screening.  (Sulenta Decl. at ¶ 7, ECF No. 70-8).

General Manager Sulenta states that she attempted to call Plaintiff on September 10, 11 and 12, 2012, to inform him of her

10

decision that he had to undergo drug and alcohol testing.
(Sulenta Decl. at ¶¶ 8, 10-11, ECF No. 70-8).

General Manager Sulenta first spoke with Plaintiff on the
phone on September 12, 2012. (Sulenta Decl. at ¶ 11, ECF No. 70-
8). Sulenta informed Plaintiff that he needed to submit to a
drug and alcohol screening as a result of the September 8, 2012
incident. (Id.)

During the conversation, Plaintiff agreed that he would
submit to drug and alcohol testing scheduled for the next day,
September 13, 2012. (Id.) Plaintiff also informed Sulenta that
he believed that employees were causing a safety hazard by
driving vehicles in the lot too fast and without headlights.
(Goodman Depo. at pp. 281, 298-99, ECF No. 70-24).

On September 13, 2012, Plaintiff left a voicemail with
General Manager Sulenta cancelling his scheduled drug and alcohol
screening. (Sulenta Decl. at ¶ 13, ECF No. 70-8).

On September 14, 2012, Defendant's Field Employee Relations
Staff Manager Yvette Villegas spoke with Plaintiff. (Declaration
of Yvette Villegas ("Villegas Decl.") at ¶ 8, ECF No. 70-15).
Villegas advised Plaintiff Goodman of his need to submit to drug
and alcohol screening. (Id. at ¶ 8). Plaintiff did not agree to
undergo the screening. (Id.)

During the conversation, Plaintiff informed Villegas that he
believed that employees were causing a safety hazard by speeding

in the lot.  (Id. at ¶ 12).  Villegas responded that she had not

been previously informed of any such safety hazard.  (Id.)

**Plaintiff's Cataract Surgery on October 1, 2012, and His**
**Termination on October 9, 2012**

On October 1, 2012, Plaintiff had cataract surgery on his

left eye.  (Certification of Health Care Provider for Employee's

Serious Health Condition dated October 3, 2012, at pp. 17-20,

attached as Ex. A to the Declaration of Gerry Cornett ("Cornett

Decl.", ECF No. 70-22).

On October 3, 2012, Plaintiff provided Unum, Defendant's

third-party leave administrator, a medical certificate to support

his request for leave under the Family Medical Leave Act to have

cataract surgery.  (Id.)

On October 9, 2012, Defendant sent Plaintiff a letter to

notify him of his termination.  (Letter to Plaintiff from

Defendant dated October 9, 2012, attached as Ex. E to Villegas

Decl., ECF No. 70-20).

Unum continued to communicate with Plaintiff as to his leave

request, and Plaintiff provided supplemental documentation to

Unum on October 9, 2012, and October 12, 2012.  (Id. at pp. 25-

32).

On October 15, 2012, Unum informed Plaintiff that he was

approved for leave pursuant to the Family Medical Leave Act

beginning on October 1, 2012.  (Id. at p. 34).

12

On October 17, 2012, Unum revoked its approval of
Plaintiff's FMLA leave request due to his termination.  (Id. at
p. 41).

On August 21, 2013, Plaintiff filed a charge of
discrimination with the Equal Opportunity Employment Commission.
(Goodman Depo. at pp. 160-61, 172, ECF No. 70-24; EEOC Charge of
Discrimination dated 8-21-13 at p. 185, attached as Ex. 2 to
Goodman Depo., ECF No. 70-24).

**Remaining Facts In Dispute**

The Parties dispute if Plaintiff caused damage to
Defendant's vehicle when he reversed it into the padded pole on
September 8, 2012.

Plaintiff claims there was no damage to the vehicle.
Plaintiff stated in his Deposition that he did not see any
visible damage to the vehicle.  (Goodman Depo. at 329-31, ECF No.
70-24).

Defendant asserts that there was damage to the vehicle, as
reported by Operations Manager Tomas.  Despite Defendant's claim,
Operations Manager Tomas' Incident Report dated September 8,
2012, states that Tomas "checked the car for damages & couldn't
barely see anything."  (Incident Report completed by Zamuel
Kalani Tomas dated 9/8/12, attached as Ex. A to Tomas Decl., ECF
No. 70-6).

Operations Manager Tomas claimed to have taken pictures of the damage to the vehicle, but the pictures were "accidentally deleted." (Id.; Tomas Decl. at ¶¶ 4-5, ECF No. 70-5).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of

law.   That burden is met by pointing out to the district court
that there is an absence of evidence to support the non-moving
party's case.   Id.

If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).   The opposing party must present admissible
evidence showing that there is a genuine issue for trial. Fed. R.
Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
1049 (9th Cir. 1995).   "If the evidence is merely colorable, or
is not significantly probative, summary judgment may be granted."
Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party.   State Farm Fire & Casualty Co. v. Martin, 872
F.2d 319, 320 (9th Cir. 1989).   Opposition evidence may consist
of declarations, admissions, evidence obtained through discovery,
and matters judicially noticed.   Fed. R. Civ. P. 56(c); Celotex,
477 U.S. at 324.   The opposing party cannot, however, stand on
its pleadings or simply assert that it will be able to discredit
the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec.
Serv., 809 F.2d at 630.   The opposing party cannot rest on mere
allegations or denials.   Fed. R. Civ. P. 56(e); Gasaway v.

15

Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir.
1994).  When the non-moving party relies only on its own
affidavits to oppose summary judgment, it cannot rely on
conclusory allegations unsupported by factual data to create an
issue of material fact.  Hansen v. United States, 7 F.3d 137, 138
(9th Cir. 1993); see also National Steel Corp. v. Golden Eagle
Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

**Count I:  Racial Discrimination**

On October 9, 2014, Plaintiff filed a Second Amended
Complaint.  (ECF No. 35).  Count I in the Second Amended
Complaint alleges a claim for racial discrimination pursuant to
Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C.
§ 2000e-2.

Title VII of the Civil Rights Act of 1964 provides, in
relevant part:

> It shall be unlawful employment practice for an
> employer . . . to fail or refuse to hire or to
> discharge any individual, or otherwise to
> discriminate against any individual with respect to
> his compensation, terms, conditions, or privileges
> of employment, because of such individual's race,
> color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1) (2006).

On October 7, 2015, Defendant filed a Motion for Summary
Judgment as to each of the counts in Plaintiff's Second Amended

16

Complaint.  (ECF No. 69).

In his Opposition, Plaintiff did not address Defendant's Motion for Summary Judgment as to his racial discrimination claim.  (See Plaintiff John Goodman's Opposition to Defendant DTG Operations, Inc.'s Motion for Summary Judgment, ECF No. 73; Concise Statement of Facts in Response to Defendant DTG Operations, Inc.'s Concise Statement of Facts in Support of Motion for Summary Judgment, ECF No. 72).

The Court finds that Plaintiff has abandoned his racial discrimination claim pursuant to Title VII of the Civil Rights Act of 1964.  Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009); Jenkins v. Cnty. of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding that the plaintiff abandoned his claims that were not raised in his opposition to the defendant's motion for summary judgment).

Defendant's Motion for Summary Judgment as to Count I for racial discrimination is **GRANTED**.

**Count II: Disability Discrimination**

Count II in Plaintiff's Second Amended Complaint alleges a claim for disability discrimination pursuant to the Americans With Disabilities Act of 1990, codified at 42 U.S.C. § 12112(a).

Title I of the ADA, 42 U.S.C. § 12112(a), prohibits an employer from discriminating "against a qualified individual with

a disability because of the disability of such individual in
regard to job application procedures, the hiring, advancement, or
discharge of employees."  To establish a prima facie case of
disability discrimination, Plaintiff must demonstrate that:

> (1)  he is "disabled" within the meaning of the statute;
>
> (2)  he is a "qualified individual," meaning he is able to perform the essential functions of his job, either with or without reasonable accommodations; and
>
> (3)  he suffered an adverse employment action "because of" his disability.

Hutton v. Elf Atochem North Am., Inc., 273 F.3d 884, 891
(9th Cir. 2001).

On October 7, 2015, Defendant filed a Motion for Summary
Judgment as to each of the counts, including Count II for
disability discrimination as stated in Plaintiff's Second Amended
Complaint.  (ECF No. 69).

In his Opposition, Plaintiff did not address Defendant's
Motion for Summary Judgment as to his disability discrimination
claim.  (See Plaintiff John Goodman's Opposition to Defendant DTG
Operations, Inc.'s Motion for Summary Judgment, ECF No. 73;
Concise Statement of Facts in Response to Defendant DTG
Operations, Inc.'s Concise Statement of Facts in Support of
Motion for Summary Judgment, ECF No. 72).

The Court finds that Plaintiff has abandoned his disability
discrimination claim pursuant to the Americans With Disabilities
Act of 1990.  Ramirez, 560 F.3d at 1026; Jenkins, 398 F.3d at

18

1095 n.4.

Defendant's Motion for Summary Judgment as to Count II for disability discrimination is **GRANTED**.

**Count III: Retaliation**

Count III in Plaintiff's Second Amended Complaint alleges a claim for retaliation.  Plaintiff's only allegation with respect to Count III is that:

> The actions of Defendant's agents and employees in
> terminating Plaintiff or otherwise discriminating
> against him because he opposed discrimination due to
> racial discrimination alleged herein were in violation
> of law, for which Plaintiff is entitled to an award of
> damages to be proven at trial.
> (Second Amended Complaint at ¶ 37, ECF No. 35).

Federal law prohibits retaliation against an employee for making a charge or otherwise participating in a proceeding pursuant to 42 U.S.C. § 2000e-3(a).

42 U.S.C. § 2000e-3(a) provides:

> It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees
> or applicants for employment, for an employment agency,
> or joint labor-management committee controlling
> apprenticeship or other training or retraining,
> including on-the-job training programs, to discriminate
> against any individual, or for a labor organization to
> discriminate against any member thereof or applicant
> for membership, because he has opposed any practice
> made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified,
> assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this
> subchapter.

To establish a prima facie case of retaliation, a plaintiff

must demonstrate that:

    (1)   he engaged in a protected activity;

    (2)   the defendant subjected the plaintiff to an adverse employment action; and

    (3)   a causal link existed between the protected activity and the adverse employment action.

<u>Nilsson v. City of Mesa</u>, 503 F.3d 947, 954 (9th Cir. 2007).

Defendant has moved for summary judgment as to Count III for retaliation as stated in Plaintiff's Second Amended Complaint. (ECF No. 69).

Plaintiff did not address Defendant's Motion for Summary Judgment as to his retaliation claim. (<u>See</u> Plaintiff John Goodman's Opposition to Defendant DTG Operations, Inc.'s Motion for Summary Judgment, ECF No. 73; Concise Statement of Facts in Response to Defendant DTG Operations, Inc.'s Concise Statement of Facts in Support of Motion for Summary Judgment, ECF No. 72).

The Court finds that Plaintiff has abandoned his retaliation claim. <u>Ramirez</u>, 560 F.3d at 1026; <u>Jenkins</u>, 398 F.3d at 1095 n.4.

Defendant's Motion for Summary Judgment as to Count III for retaliation is **GRANTED**.

**Count IV: Violation of Family Medical Leave Act**

Pursuant to the Family Medical Leave Act ("FMLA"), an employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period because of a serious health condition

20

that makes the employee unable to perform the functions of the positions of such employee." 29 U.S.C. § 2612(a)(1)(D).

The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of or attempt to exercise any right provided under the FMLA statute.  Bachelder v. Am. West Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001).

To establish a prima facie case of interference under the FMLA, the plaintiff must show:

(1)  he was eligible for the FMLA's protections;

(2)  his employer was covered by the FMLA;

(3)  he provided sufficient notice of his intent to take leave pursuant to the FMLA;

(4)  he was entitled to FMLA leave; and,

(5)  his employer denied him FMLA benefits to which he was entitled.

Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011).

Defendant does not dispute the first two prongs of the test that Plaintiff was eligible for the FMLA's protections and that he was covered by the FMLA.  There are disputes of fact that preclude finding summary judgment in Defendant's favor as to the remaining elements of an FMLA interference claim.

**A.   There is Evidence that Plaintiff Provided Sufficient Notice of His Intent to Take Leave Pursuant to the FMLA**

Pursuant to Section 2612(e) of the FMLA, an employee seeking

21

leave for a serious health condition based on planned medical
treatment:

> (A)  shall make a reasonable effort to schedule the
>       treatment so as not to disrupt the operations of the
>       employer, ...; and
>
> (B)  shall provide the employer with not less than 30 days'
>       notice, before the date the leave is to begin, of the
>       employee's intention to take leave under such
>       subparagraph, except that if the date of the treatment
>       requires leave to begin in less than 30 days, the
>       employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2)(A)-(B).

Notice need only be given one time, but the employee shall
advise the employer as soon as practicable if dates were
initially unknown.  29 C.F.R. § 825.302(a).  At a minimum, an
employee seeking to take leave pursuant to the FMLA must provide
notice "as soon as practicable under the facts and circumstances
of the particular case."  29 C.F.R. § 825.304.

An employee shall provide at least verbal notice sufficient
to make the employer aware that the employee needs FMLA-
qualifying leave, and the anticipated timing and duration of the
leave.  29 C.F.R. § 825.302(c).

In mid-August 2012, Plaintiff Goodman spoke with Defendant's
General Manager Nancy Sulenta about the possibility that he would
need to have cataract surgery in the future.  (Goodman Depo. at
p. 185, ECF No. 70-24).  General Manager Sulenta provided
Plaintiff with information to contact Unum, Defendant's third-
party leave administrator, about seeking leave.  (Id.)

Following the incident on September 8, 2012, Plaintiff
testified in his deposition that he realized that he needed to
immediately take leave as his vision was beginning to interfere
with his ability to perform his job functions.  (Goodman Depo. at
pp. 193-94, ECF No. 70-24).

On September 10, 2012, Plaintiff informed Defendant's
Senior Operations Manager Diane Martin of his request to take
leave pursuant to the FMLA in order to have cataract surgery.
(Sulenta Decl. at ¶ 7, ECF No. 70-8; Goodman Depo. at pp. 188-89,
ECF No. 70-24).  Senior Operations Manager Martin provided
Plaintiff with contact information for Unum, Defendant's third-
party leave administrator, and Plaintiff communicated his leave
request to Unum.  (Goodman Depo. at pp. 190, 196, ECF No. 70-24;
Declaration of Gerry Cornett at ¶ 3, ECF No. 70-21).

Plaintiff's September 10, 2012 request to immediately begin
taking FMLA leave was not more than thirty days before his leave
was to begin as provided in 29 U.S.C. § 2612(e)(2)(B).

There are questions of fact as to whether Plaintiff made his
request to take FMLA leave "as soon as practicable."  29 C.F.R. §
825.304.

The record is undeveloped as to the severity of Plaintiff's
vision impairment at the time he requested leave.

Plaintiff had put Defendant on notice of his need for
cataracts as early as August 2012, and Plaintiff's supervisor was

aware of Plaintiff's continued problems with vision.  Sadeh v.
Venetian Casino Resort, LLC, 2012 WL 3065442, at *3 (D. Nev. July
27, 2012).

Plaintiff did not have his cataract surgery scheduled at the
time of his leave request, but there is evidence that he was no
longer able to perform his job duties.  Unlike a foreseeable
scheduled surgery that allows a patient to work until the date of
surgery, Plaintiff testified that his vision issues related to
his scheduled surgery prevented him from performing some of his
job functions.  Warren v. Snap-On Tools Co., 2010 WL 2947588, at
*3 (D. Nev. July 21, 2010).

Construing the record in a light most favorable to
Plaintiff, there is evidence that Plaintiff provided notice "as
soon as practicable" pursuant to the Family Medical Leave Act.

## B.   There is Evidence that Plaintiff Had a Serious Health Condition Entitling Him to FMLA Leave Prior to His Termination

A plaintiff must show that he had a serious health condition
that made him unable to perform the functions of his position in
order to establish his entitlement to leave pursuant to the FMLA.
29 C.F.R. § 825.112(a)(4).

The Department of Labor's regulations state that an employee
suffers from a serious health condition and is "unable to perform
the functions of the position" when a health care provider finds

that the employee is unable to work at all or is unable to perform any one of the job's essential functions.  29 C.F.R. § 825.123.

Plaintiff provided evidence to Defendant from his health care provider that he was unable to perform his essential job duties following his surgery on October 1, 2012.  Rowe v. Laidlaw Transit, Inc., 244 F.3d 1115, 1118 (9th Cir. 2001) (finding leave qualified as FMLA leave when the plaintiff's physician restricted her activities, including those that had been an essential part of her job).

Defendant argues that Plaintiff's health care provider did not provide sufficient details as to the extent to which Plaintiff was incapacitated prior to his surgery on October 1, 2012.  Despite Defendant's argument, there are questions of fact as to the duration of Plaintiff's serious health condition and his compliance with the FMLA notification requirements.  Price v. Multnomah Cnty., 132 F.Supp.2d 1290, 1298 (D. Or. Jan. 31, 2001).

It is undisputed that Plaintiff's health care provider determined that Plaintiff had a serious health condition following his surgery.  (Cornett Decl. at ¶ 4, ECF No. 70-21; Certification of Health Care Provider dated 10/3/12, at p. 19, ECF No. 70-22).  Plaintiff's cataract surgeon stated on Plaintiff's Certification of Health Care Provider for Employee's Serious Health Condition Form that Plaintiff was unable to

25

perform "heavy lifting, bending, or strenuous activity for one wk after surgery." (Certification of Health Care Provider dated 10/3/12, at p. 19, ECF No. 70-22).

Defendant's third-party leave administrator, Unum, found that Plaintiff was entitled to FMLA leave and approved his request beginning on October 1, 2012 through to November 28, 2012. (Letter from Unum Group to John Goodman, dated October 15, 2012, at p. 34, attached as Ex. A to Cornett Decl., ECF No. 70-22).

Plaintiff has provided evidence that he was entitled to FMLA beginning at least by October 1, 2012.

### C.   There is Evidence that Defendant Denied Plaintiff FMLA Benefits To Which He Was Entitled

Plaintiff has provided evidence that he was entitled to FMLA benefits beginning at least by October 1, 2012, and that he was unable to perform his job functions through the following week. Plaintiff was terminated during this period of time that he had sought FMLA leave for his cataracts condition.

On October 9, 2012, Defendant sent Plaintiff a letter to notify him of his termination. (Letter to Plaintiff from Defendant dated October 9, 2012, attached as Ex. E to Villegas Decl., ECF No. 70-20). The letter stated that Plaintiff's termination was effective on October 3, 2012, two days following Plaintiff's cataract surgery while he was incapacitated. (Id.)

26

Despite the termination letter, on October 15, 2012, Unum notified Plaintiff that he was approved for FMLA leave from October 1, 2012 through to November 28, 2012. (Letter from Unum Group to John Goodman, dated October 15, 2012, at p. 34, attached as Ex. A to Cornett Decl., ECF No. 70-22). Two days later, on October 17, 2012, Unum retracted the approval, stating "on October 17, 2012, we were notified that your employment was terminated as of October 4, 2012. Therefore, your request for leave from October 1, 2012 to October 4, 2012 is not approved under the FMLA." (Letter from Unum Group to John Goodman, dated October 17, 2012, at p. 41, attached as Ex. A to Cornett Decl., ECF No. 70-22).

Construing the record in Plaintiff's favor, there is evidence that Plaintiff was denied FMLA leave for which he was entitled.

The regulation promulgated by the Department of Labor, 29 C.F.R. § 825.220(c) plainly prohibits the use of FMLA-protected leave as a negative factor in an employment decision. Bachelder, 259 F.3d at 1125-26. A reasonable trier of fact could determine that Defendant's decision to terminate Plaintiff interfered with Plaintiff's right to leave pursuant to the Family Medical Leave Act. Id.

Defendant's Motion for Summary Judgment as to Count IV for a violation of the Family Medical Leave Act is **DENIED**.

27

**Count V:   The Hawaii State Whistleblower's Protection Act**

The Hawaii Whistleblower's Protection Act prohibits the discharge of an employee because the employee "reports or is about to report to the employer or a public body a violation or suspected violation of a law, rule, ordinance, or regulation, adopted pursuant to Hawaii state law.  Haw. Rev. Stat. § 378-62; <u>Crosby v. State Dept. Of Budget & Fin.</u>, 876 P.2d 1300, 1309-10 (Haw. 1994).

To establish a prima facie case pursuant to the Hawaii Whistleblower's Protection Act, the plaintiff must show that:

> (1)  he engaged in protected conduct as defined by the Act;
>
> (2)  the defendant took some adverse action against him; and,
>
> (3)  there is a causal connection between the adverse action and the "whistleblowing."

<u>Casumpang v. Hawaiian Commercial & Sugar Co.</u>, 2014 WL 4322168, at *13 (D. Haw. Aug. 29, 2014).

**A.   Protected Conduct or "Whistleblowing"**

Plaintiff engaged in protected conduct when he complained to his supervisors of safety hazards at Defendant's workplace. <u>Crosby</u>, 876 P.2d 1309-10.

Plaintiff complained to various supervisors in 2009 about the safety hazard posed by his co-workers' driving.  (Goodman

28

Depo. at pp. 282-83, ECF No. 70-24).  Plaintiff complained about
these same issues to his direct supervisor, Operations Manager
Tomas in the fall of 2012.  (Goodman Depo. at pp. 281-84, 298-99,
ECF No. 70-24).

Plaintiff also made these complaints to Defendant's General
Manager Sulenta on September 12, 2012, and to Staff Manager
Villegas on September 14, 2012, a few weeks before his
termination.  (Id.; Goodman Depo. at pp. 281-84, 298-99, ECF No.
70-24; Villegas Decl. at ¶ 12, ECF No. 70-15).

## B.   Adverse Action

It undisputed that Plaintiff suffered an adverse action when
he was terminated in October 2012.  Courts in the Ninth Circuit
have consistently held that termination of employment constitutes
an adverse employment action.  Wigent v. Science Applications
Intern. Corp., 19 F.Supp.3d 1012, 1031 (D. Haw. 2014) (citing
Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000)).

## C.   Causal Connection

The causal connection requirement pursuant to the Hawaii
Whistleblower's Protection Act has two steps.  Casumpang, 2014 WL
4322168, at *14.

First, the employee must make a prima facie showing that his
protected conduct was a "substantial or motivating" factor in the

29

decision to terminate the employee.  Id.; Crosby, 876 P.2d at 1310.

Second, once the employee makes its prima facie showing, the employer may "defend affirmatively by showing that the termination would have occurred regardless of the protected activity."  Crosby, 876 P.2d at 1310 (citing NLRB v. Howard Elec. Co., 873 F.2d 1287, 1290 (9th Cir. 1989)).

### 1.   Substantial or Motivating Factor

To show that an employee's protected conduct was a "substantial or motivating factor" in the employer's decision to terminate, a plaintiff can introduce evidence regarding the proximity in time between the protected action and the adverse employment action.  Griffin v. JTSI, Inc., 654 F.Supp.2d 1122, 1132-33 (D. Haw. 2008).  Proximity in time is one type of circumstantial evidence that is sufficient on its own to meet the plaintiff's burden to establish causation in a Hawaii Whistleblowers' Protection Act case.  Id.

Less than three months between the protected activity and the adverse employment action is generally sufficient to infer that the employee's protected conduct was a "substantial or motivating factor" in the employer's decision.  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987); You v. Longs Drug Stores Cal., LLC, 937 F.Supp.2d 1237, 1258 (D. Haw. 2013).

Here, Plaintiff's termination in October 2012 occurred "on the heels" of his complaints about workplace safety to his supervisors in September of 2012.  <u>Villarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1065 (9th Cir. 2002).

### 2.    Affirmative Defense

Defendant can rebut Plaintiff's prima facie showing by demonstrating that Plaintiff's termination would have occurred regardless of the protected activity.  <u>Casumpang</u>, 2014 WL 4322168, at *14; <u>Griffin</u>, 654 F.Supp.2d at 1131-32.

Defendant claims that Plaintiff would have been terminated regardless of his safety complaints because he caused damage to one its vehicles on September 8, 2012, and subsequently declined to undergo a drug and alcohol screening following the incident.

There are genuine issues of material fact as to whether Plaintiff caused damage to Defendant's vehicle and whether he should have been required to undergo the drug and alcohol screening.

It is undisputed that pursuant to Defendant's policy, an employee is only required to undergo a drug and alcohol screening if the employee is involved in an accident **that causes damage** to Defendant's vehicles or equipment.  (Defendant DTG's Drug and Alcohol Policy at p. 4, attached as Ex. B to Sulenta Decl., ECF No. 70-10) (emphasis added).

31

Plaintiff contends that he did not cause damage to
Defendant's vehicle on September 8, 2012. (Goodman Depo. at 329-
31, ECF No. 70-24). There is evidence to support Plaintiff's
position. Plaintiff testified at his deposition that
"[Operations Manager Tomas] was the first one to check for damage
and conveyed to [Plaintiff] that there was no damage." (Goodman
Depo. at p. 329, ECF No. 70-24).

Plaintiff testified that Tomas did not place a sticker on
the vehicle to indicate that there was damage to it. (Goodman
Depo. at p. 330, ECF No. 70-24).

Defendant rented the vehicle to a customer immediately after
the incident. (Incident Report completed by Zamuel Kalani Tomas
dated 9/8/12, attached as Ex. A to Tomas Decl., ECF No. 70-6).

Defendant argues that there was damage to the vehicle that
provided a justification for terminating Plaintiff. The only
evidence Defendant has to support that there was damage to the
vehicle is Tomas' testimony, which is disputed by Plaintiff.

Tomas' own statements regarding the alleged damage to the
vehicle are inconsistent. Tomas' Declaration asserts that he
"saw minor damage to the rear bumper" after the incident on
September 8, 2012. (Tomas Decl. at ¶ 5, ECF No. 70-5). Tomas'
Incident Report states that he "checked the car for damages &
couldn't barely see anything." (Incident Report completed by
Zamuel Kalani Tomas dated 9/8/12, attached as Ex. A to Tomas

Decl., ECF No. 70-6).  Tomas also claimed to have taken pictures of the damage to the vehicle, but the pictures were "accidentally deleted."  (Id.; Tomas Decl. at ¶¶ 4-5, ECF No. 70-5).  Tomas never explained how the pictures were deleted.

Plaintiff Goodman directly contradicts Tomas' description of the incident.  Plaintiff testified in his deposition that Tomas was the first person to examine the vehicle for damage and said, "Oh, it's okay.  No damage.  Put it on the line."  (Goodman Depo. at p. 331, ECF No. 70-24).

There is no dispute that Tomas had the vehicle rented immediately after the incident.  Tomas wrote an Incident Report on September 8, 2012, but it does not describe the make, model, year, color, license plate, or VIN number of the vehicle. (Incident Report completed by Zamuel Kalani Tomas dated 9/8/12, attached as Ex. A to Tomas Decl., ECF No. 70-6).  Tomas' own Report acknowledges that he did not write down any information about the vehicle before it was rented out.  (Id.)  Tomas' failure to provide identifying information about the vehicle in any of his statements precluded further investigation into the question of damage to the vehicle.

Tomas claims to have provided Plaintiff Goodman with an Accident/Damage Report to complete.  (Tomas Decl. at ¶ 6, ECF No. 70-5).  Plaintiff disputes this fact and asserts he was never given such a report.  (Goodman Depo. at pp. 334-336, ECF No. 70-

24).

Defendant's General Manager Sulenta and Defendant's Staff Relations Manager Villegas did not have any direct knowledge of any damage to the vehicle.  The managers relied solely on statements from Operations Manager Tomas that Plaintiff denies. (Tomas Decl. at ¶ 9, ECF No. 70-5; Sulenta Decl. at ¶ 4, 9, ECF No. 70-8; Villegas Decl. at ¶ 3-5, ECF No. 70-15).

Defendant has not established that Plaintiff was terminated because he caused damage to one of its vehicles and did not undergo a drug and alcohol screening.

Defendant's Motion for Summary Judgment as to Count V for a violation of the Hawaii Whistleblower's Protection Act is **DENIED**.

### CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 69) is **GRANTED, IN PART, AND DENIED IN PART.**

    **Count I:**   Defendant's Motion for Summary Judgment as to Count I for racial discrimination is **GRANTED**.

    **Count II:**   Defendant's Motion for Summary Judgment as to Count II for disability discrimination is **GRANTED**.

    **Count III:**   Defendant's Motion for Summary Judgment as to Count III for retaliation is **GRANTED**.

    **Count IV:**   Defendant's Motion for Summary Judgment as to Count IV for a violation of the Family Medical Leave Act is **DENIED**.

34

**Count V:**   Defendant's Motion for Summary Judgment as to
Count V for a violation of the Hawaii
Whistleblower's Protection Act is **DENIED**.

IT IS SO ORDERED.

DATED: December 23, 2015, Honolulu, Hawaii.



_/s/ Helen Gillmor_____

Helen Gillmor
United States District Judge

John Goodman v. DTG Operations, Inc.; Civ. No. 14-00222 HG-KSC;
**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT DTG
OPERATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 69)**